## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DEMOND EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 15-cv-9086 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| ERIC DAVID, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Eric David's and Hiram Grau's motion to dismiss [47]
Plaintiff Demond Edwards's amended complaint for failure to state a claim. For the reasons set
forth below, Defendants' motion to dismiss [47] is granted in part and denied in part.

## I.      Background[1]

Early in the morning on November 16, 2013, Plaintiff Demond Edwards was arrested by
Illinois State Police ("ISP") officer Defendant Eric David on Interstate 80 near Torrence Avenue
in Illinois on suspicion of driving under the influence of alcohol. [41] at ¶¶ 6, 8. Following the
arrest, Defendant David handcuffed Plaintiff's hands behind his back and placed him in the rear
seat of a police cruiser. *Id*. ¶ 9. Significantly, Defendant David did not fasten Plaintiff's
seatbelt, and, because he was handcuffed, Plaintiff could not fasten the belt. *Id*. ¶ 10.

According to the amended complaint, Defendant David then proceeded to drive Plaintiff
to the Lansing, Illinois police station recklessly. Specifically, Defendant David continually took
his eyes off the road to "interrogate" Plaintiff, he drove through a construction zone at a high rate

---

[1] The facts are drawn from Plaintiff's amended complaint. For the purposes of Defendants' motions to
dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See
*Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

of speed, and he dangerously passed an 18-wheel truck and merged as a lane was closing due to construction work. *Id*. ¶¶ 12-13. Defendant David began to pass a second truck on the right, but as he did so, he failed to notice the "clear signage" that the right lane was about to be closed by construction barrels. As Defendant David continued to drive, the right lane ended, and Defendant David—to avoid crashing into the truck—"swerved to the right, crashed through construction barrels, and abruptly brought the cruiser to a stop in a construction zone." *Id*. ¶¶ 14-15. During this incident, Plaintiff, who again was not seatbelted and whose hands were restrained, was "thrown" from the rear passenger side to the driver's side floor, thereby causing injuries to his lower spine, right shoulder, and right wrist. *Id*. ¶¶ 16, 21. Despite his injuries, Defendant David "commanded" him to sit up and get off the floor of the car. *Id*. ¶ 18. Plaintiff does not elaborate on the nature of his injuries, although he alleges that he was taken to the hospital, treated, and billed. *Id*. ¶¶ 21, 23.

Plaintiff alleges that this accident was recorded on Defendant David's dashboard and rear seat video cameras, and he has supplied the Court with an excerpt of the recording. *Id*. ¶ 24 & Ex. A. Regarding the entire recording, Plaintiff alleges that the corresponding audio "inexplicably cuts out" for two minutes and 45 seconds of its duration while Defendant David made a phone/radio call. *Id*. ¶ 24.

On November 9, 2015, Plaintiff's *pro se* complaint was docketed with the Court. [9]. Plaintiff was later appointed counsel [27], and on September 15, 2016, he filed an amended five-count complaint. [41]. Against Defendant David, the amended complaint asserts the following claims: alternative Fourth and Fourteenth Amendment claims for "unsafe conditions of confinement or failure to protect" (Count I); negligent or willful and wanton conduct under Illinois law (Count II); intentional infliction of emotional distress under Illinois law (Count III);

and spoliation of evidence under 42 U.S.C. § 1983 and Illinois law (Count IV). Against Defendant Grau, who was the Director of the ISP at the time of the traffic accident, Plaintiff asserts a claim for "Failure to Train or Supervise" that takes issue with ISP policies in place at the time of the incident (Count V). All of Plaintiff's claims are brought against Defendants in their individual capacities. Defendants have moved to dismiss the amended complaint, offering specific arguments against Counts I and V and the federal portion of Count IV, and suggesting that the Court decline to exercise supplemental jurisdiction over the state law claims. See [47].

## II.    Legal Standard

Defendants seek dismissal of Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), which challenges its legal sufficiency. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations must, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599-600 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). However, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise

a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  For purposes of a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor.  *Killingsworth*, 507 F.3d at 618.

## III.   Analysis

Defendants' motion to dismiss challenges only Plaintiff's federal claims, which are all brought pursuant to 42 U.S.C. § 1983.  To allege a claim under § 1983, a plaintiff must set forth facts sufficient to show that the defendants deprived him of a right or an interest secured by the Constitution or laws of the United States and that the defendants were acting under color of state law.  *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1039 (7th Cir. 1998).  Here, there is no question that Defendants are state actors, and the Court therefore must determine whether Plaintiff has alleged that the Defendants deprived him of federally-protected rights.  *Id*.; see also *County of Sacramento v. Lewis*, 523 U.S. 833, 862 n.5 (1998) (the first step in a § 1983 action "is to identify the exact contours of the underlying right said to have been violated").

### A.   Count I – Constitutional Violations by Defendant David

Count I repeatedly alleges that "there was no reasonable basis" for Defendant David's actions of (1) handcuffing Plaintiff, (2) failing to fasten Plaintiff's seatbelt, (3) driving recklessly, and (4) demanding that Plaintiff move following the accident.  See [41] at ¶¶ 26-29.  Plaintiff ultimately alleges that Defendant David's "objectively unreasonable" actions violated not only his Fourth Amendment rights (*id*. ¶ 30), but also that, "in the alternative," they violated his Fourteenth Amendment rights because they were performed "intentionally" and demonstrated a deliberate indifference to his safety (*id*. ¶ 31).  Accordingly, in alleging that Defendant David put him in danger during his transport from the scene of his arrest to the police station, Plaintiff asks

the Court to construe Count I as a claim for violation of both his Fourth and Fourteenth Amendment rights.

Although the parties do not dispute that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being," see *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989); see also [51] at 8; [55] at 2-3; they dispute the constitutional right potentially implicated by Defendant David's conduct.  Defendants move to dismiss Count I in its entirety, arguing that it primarily alleges a Fourth Amendment violation and that Amendment does not protect Plaintiff from the conduct he has alleged. Specifically, Defendants argue that the Fourth Amendment is more appropriately involved in situations of (i) searches and seizures performed without probable cause, (ii) excessive force, (iii) failure to protect, or (iv) abusive conditions of confinement, to name a few.  See [47] at 4-5. According to Defendants, applying the Fourth Amendment to Plaintiff's allegations would constitute an unwarranted expansion of the Amendment under the Seventh Circuit's decisions in *Wilkins v. May*, 872 F.2d 190 (7th Cir. 1989) and *Payne for Hicks v. Churchich*, 161 F.3d 1030 (7th Cir. 1998).  [47] at 6.  Citing little relevant Seventh Circuit case law, Plaintiff responds that because of his status as an arrestee who had not yet been charged, he was protected from any injury at the hand of law enforcement by *both* the Fourth and Fourteenth Amendments.  See [51] at 4-5.  Before delving into Count I's specific allegations, the Court considers which standard to apply—the Fourth Amendment's reasonableness standard or the deliberate-indifference standard derived from the Eighth Amendment and applied to claims by detainees awaiting trial by virtue of the Due Process Clause.  See *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007) (although the Eighth Amendment deliberate-indifference standard only applies to convicted

prisoners, the Seventh Circuit has previously stated that the same standard applies to pretrial detainees under the Fourteenth Amendment's due process clause).

### 1. Constitutional Claims by Arrestees

The Seventh Circuit has explained more than once that the scope of an individual's right to be free from punishment "hinges on his status within the criminal justice system." *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009). In particular, the protections of the Fourth Amendment apply at arrest and until an arrestee has benefitted from a judicial determination of probable cause, otherwise known as a *Gerstein*[2] hearing; then, the Fourteenth Amendment's due process principles apply to pretrial detainees; and finally, the Eighth Amendment applies following conviction. *Ortiz v. City of Chicago*, 656 F.3d 523, 530-31 (7th Cir. 2011).

In *Lopez v. City of Chicago*, 464 F.3d 711 (7th Cir. 2006), the Seventh Circuit articulated when a Fourth-Amendment arrestee becomes a Fourteenth-Amendment detainee:

> The Fourth Amendment protects against unreasonable seizures; an arrest is a seizure, and the Fourth Amendment affords persons who are arrested the further, distinct right to a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. The judicial determination of probable cause may be made before the arrest (in the form of an arrest warrant) or promptly after the arrest, at a probable cause hearing (sometimes called a *Gerstein* hearing). But whether the arresting officer opts to obtain a warrant in advance or present a person arrested without a warrant for a prompt after-the-fact *Gerstein* hearing, the Fourth Amendment requires a judicial determination of probable cause.

*Id.* at 718-19 (internal quotations and citations omitted); cf. *Forrest v. Prine*, 620 F.3d 739, 743-44 (7th Cir. 2010) (applying the Fourteenth Amendment to excessive-force claim brought by an individual who alleged harm in the booking process; repeatedly calling plaintiff a "pretrial detainee"). In *Lopez*, the plaintiff brought a claim for unconstitutional conditions of confinement regarding mistreatment he sustained during four days in custody following a warrantless arrest.

---

[2] *Gerstein v. Pugh*, 420 U.S. 103 (1975).

The district court analyzed the claim under the Fourteenth Amendment. The Seventh Circuit disagreed, holding that the claim instead was properly analyzed under the Fourth Amendment's reasonableness standard because the plaintiff had not yet had a *Gerstein* hearing. *Lopez*, 464 F.3d at 718-19. This is consistent with the Supreme Court's more recent articulation that "those detained prior to trial without such a [probable cause] finding could appeal to 'the Fourth Amendment's protection against unfounded invasions of liberty.'" *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918 (2017) (quoting *Gerstein*, 420 U.S. at 112).[3]

Recently, a court in this district considered the interplay of a finding of probable cause with the application of either the Fourth or Fourteenth Amendment. In *Sims v. Olszewski*, 2017 WL 1903121 (N.D. Ill. May 9, 2017), the court was faced with a situation in which a pretrial detainee in custody at the Cook County Jail for one crime brought claims against Chicago police officers under the Fourteenth Amendment alleging unconstitutional conditions of confinement relating to his exposure to extremely cold temperatures without adequate clothing during transport to a police station and then overnight at the station while police investigated him for a separate crime. *Id*. at *2-*3. The police officers moved to dismiss, arguing that the plaintiff's claims were governed instead by the Fourth Amendment, because he had not yet had a probable cause hearing in the case that was still under investigation. *Id*. at *3. Ultimately, the court rejected the officers' argument and applied the Fourteenth Amendment because the government already had established probable cause to detain the plaintiff in his other case. The court explained:

> The distinction between an arrestee and a pretrial detainee, then, is not simply whether a *Gerstein* hearing has been held. Instead, the defining moment is when

---

[3] The Supreme Court went even further in *Manuel* to find that the Fourth Amendment continues to govern at least some claims for unlawful pretrial detention even after the "legal process" has begun through a judicial probable-cause determination or comparable procedure, but that holding is not relevant to the situation here.

the government has made a sufficient showing to justify holding the accused for an extended period. * * * The question is not precisely whether any particular event has happened in the specific case in question; it is whether the government has shown that it has probable cause to detain the accused. Before the government has met this threshold, the Fourth Amendment applies. After it has shown that it may detain him, the Fourteenth Amendment applies.

*Id*. at *4.

Applying those principles here, the amended complaint does not allege that Plaintiff was arrested pursuant to a warrant, and it specifically alleges that, at the time of the traffic accident, Plaintiff was an arrestee who had not yet had a *Gerstein* hearing. See [41] at ¶ 30. Accordingly, the protections of the Fourth Amendment applied to Plaintiff at the time of the traffic accident.

The cases highlighted by Defendants do not undermine the Court's conclusion. First, *Payne*, in which the Seventh Circuit applied the Fourteenth Amendment instead of the Fourth Amendment to claims of mistreatment in custody, involved a "pretrial detainee" who was held based on a finding of probable cause. 161 F.3d at 1039-40. There, a police officer was called to investigate an instance of public intoxication. Upon arrival at the scene, the officer discovered that a warrant had been issued for the intoxicated man's arrest stemming from his prior failure to appear at a court hearing, so the officer arrested him. *Id*. at 1034. Therefore, the arrestee "brought into the jail pursuant to an outstanding warrant, was a pretrial detainee." *Id*. at 1040. There is no conflict between *Payne* and the application of the Fourth Amendment to Count I.

In *Wilkins*, the Seventh Circuit rejected the notion of a "continuing seizure" and therefore refused to "stretch" the Fourth Amendment and its standard of reasonableness to cover a claim by an arrestee in custody who later was interrogated at gunpoint. 872 F.2d at 192-94. Instead, the Seventh Circuit went on to find narrowly that the protection in the Fourteenth Amendment's substantive due process clause to be free from bodily harm could apply there. *Id*. at 194-95. In *Lopez*, which was decided 17 years later, the Seventh Circuit noted that *Wilkins* has been limited

by subsequent Supreme Court and Seventh Circuit cases, like *Villanova v. Abrams*, 972 F.2d 792, 787 (7th Cir. 1992), which state that the Fourth Amendment's reasonableness standard applies to the deprivation of liberty suffered by a warrantless arrestee prior to a probable cause determination. *Lopez*, 464 F.3d at 719.

Even in light of this history, Defendants argue that Count I must be dismissed because the Fourth Amendment cannot remedy Defendant David's allegedly unconstitutional conduct. According to Defendants, Plaintiff has not alleged specifically that he was subjected to an illegal search or seizure. But Defendants overlook Seventh Circuit precedent since *Villanova* and *Lopez* that applies the Fourth Amendment's "objectively unreasonable" standard to claims of unconstitutional conditions of confinement and inadequate medical care brought by arrestees who had not yet had their *Gerstein* hearing. See, *e.g.*, *Currie v. Chhabra*, 728 F.3d 626, 631 (7th Cir. 2013) (finding the Fourth Amendment the relevant legal standard to analyze an arrestee estate's claim for denial of medical care where arrestee died as a result of diabetic ketoacidosis); *Ortiz*, 656 F.3d at 530 (Fourth Amendment rights were implicated and reasonableness standard was applied in a claim for constitutionally inadequate medical care by an arrestee's estate where arrestee was not permitted to take her medications while in lockup); *Sides v. City of Champaign*, 496 F.3d 820, 828 (7th Cir. 2007) (applying the Fourth Amendment to claims of inattention to medical needs, where plaintiff was ordered to stand against hot car in 90 degree heat for an hour while being cited by officers); *Williams*, 509 F.3d at 403 (noting in dicta that "[c]onditions of confinement for pretrial detainees * * * who have not yet had a judicial determination of probable cause (a *Gerstein* hearing) are * * * governed by the Fourth Amendment and its objectively unreasonable standard.").[4]

---

[4] Other circuits have found the Fourth Amendment applicable in similar factual circumstances. See, *e.g.*, *Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011) (in excessive-force claim, where, shortly after

In light of circuit precedent applying the Fourth Amendment to claims of deficient medical care by detainees, Plaintiff's complaint need not be predicated on either excessive force or lack of probable cause in order to state a claim for violation of his Fourth Amendment rights in this situation. Accordingly, based on the allegations in the amended complaint, the Court finds that under *Lopez*, *Ortiz*, and *Currie*, the protections afforded by the Fourth Amendment apply to Plaintiff's claim.

### 2.      Plaintiff's Fourth Amendment Claim

Turning to the merits of Plaintiff's claim, the Fourth Amendment protects "[t]he right of the people to be secure in their persons * * * against unreasonable searches and seizures." To state a § 1983 claim for a Fourth Amendment violation, Plaintiffs must plausibly allege that: (1) there was a search or seizure; and (2) the search or seizure was unreasonable. *Angara v. City of Chicago*, 897 F. Supp. 355, 358 (N.D. Ill. 1995); see also *Brendlin v. California*, 551 U.S. 249, 254 (2007) ("A person is seized" whenever officials "restrain[ ] his freedom of movement" such that he is "not free to leave"); *Sides*, 496 F.3d at 828 ("The governing standard at the time of arrest is the Fourth Amendment's ban on unreasonable seizures."). Assessing the constitutionality of police action during a seizure involves "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quotation omitted). Using this standard, the Court will analyze whether the allegations in Count

---

plaintiff's arrest, he was handcuffed, placed in the front seat of the car with the seat back titled far forward, and then driven around erratically so that plaintiff jerked back and forth in his seat, the Fourth Amendment applied); *Fontana v. Haskin*, 262 F.3d 871, 879-80 (9th Cir. 2001) (finding that even though the case did not involve excessive force in the traditional sense, claim still fell within the Fourth Amendment where arrestee plaintiff alleged that defendant officer sexually harassed her on the ride to the jail).

I sufficiently plead that Defendant David's conduct was objectively unreasonable under the circumstances. *Lopez*, 464 F.3d at 720.

The Court concludes that they do. Plaintiff has alleged that he was handcuffed, even though he had complied with Defendant David's and the other arresting officer's instructions. He was then placed in Defendant David's squad car and was not secured by a seatbelt. The result may well be different if Count I only complained about Defendant David's method of restraining Plaintiff. Cf. *Taylor v. Stateville Dep't of Corr.*, 2010 WL 5014185, at *1 (N.D. Ill. Dec. 1, 2010) (failure to provide seatbelts or to secure available seatbelts does not, by itself, does constitute a substantial risk of serious harm rising to the level of an Eighth Amendment violation; citing cases); *Hughes v. Widup*, 2008 WL 56003, at *3 (N.D. Ind. Jan. 3, 2008) (failure to seatbelt handcuffed and shackled inmate was not an Eighth Amendment violation). But Count I goes further to allege that with Plaintiff so restrained, Defendant David drove recklessly through a construction zone and ultimately caused a vehicle accident in which Plaintiff sustained bodily injury. These allegations are sufficient to allow Plaintiff to proceed on his Fourth Amendment claim against Defendant David for objectively unreasonable conduct during his post-arrest transportation to the police station.[5]

---

[5] In fact, courts in this district and others have found similar allegations of restraint and reckless driving to state a claim under the more onerous deliberate-indifference standard. See, *e.g.*, *Rogers v. Boatright*, 709 F.3d 403, 408-09 (5th Cir. 2013) (allegations that prison van driver drove recklessly, knowing that there was a substantial risk that prisoner would be injured if van stopped abruptly because prisoner was shackled and not seatbelted stated a claim); *Brown v. Fortner*, 518 F.3d 552, 559 (8th Cir. 2008) (allegations of driver's refusal to fasten inmate's seatbelt, driving in excess of the speed limit, following too closely, crossing over double-yellow lines, passing cars when road markings clearly prohibited passing, and ignoring plaintiff's request to slow down were sufficient to demonstrate deliberate indifference to inmate's safety); *Cuffee v. City of N.Y.*, 2017 WL 1232737, at *7 (S.D.N.Y. Mar. 3, 2017) ("An in-custody plaintiff injured during transport may, however, state a deliberate-indifference claim if he or she alleges facts in addition to the absence of seatbelts and reckless driving, that, taken as a whole, suggest that the plaintiff was exposed to conditions posing an unreasonable risk of serious harm, and that the defendants were aware of those conditions"), report and recommendation adopted 2017 WL 1134768 (S.D.N.Y. Mar. 27, 2017); *Williams v. Wisconsin Lock & Load Prisoner Transports, LLC*, 2016 WL 4124292, at *3 (N.D. Ill. Aug. 3, 2016) (allegations that driver refused to properly secure inmate's

### 3. Plaintiff's Alternative Fourteenth Amendment Claim

In light of this conclusion, the Court finds Count I's alternative Fourteenth Amendment claim, which is based on the same facts and allegations as Plaintiff's Fourth Amendment claim, duplicative. "If a constitutional claim is covered by a specific constitutional provision * * * the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Lewis*, 523 U.S. at 843 (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)); *Graham*, 490 U.S. at 394-95 (the substantive due process clause cannot serve as the basis of a civil rights claim if the government conduct is proscribed by a more specific constitutional provision); *Angara*, 897 F. Supp. at 358 ("Because the plaintiff has a valid claim under the Fourth Amendment, his Fourteenth Amendment claim is superfluous and should be dismissed."). The Court therefore dismisses Count I's alternative claim for a Fourteenth Amendment violation.[6] See [41] at ¶ 31. Defendants' motion to dismiss Count I is granted in part and denied in part.

---

seatbelt, drove too fast for the weather conditions, improperly used his cell phone while driving, and slammed on the van's breaks to avoid a collision caused by his inattention stated a plausible deliberate indifference claim); *Jamison v. YC Parmia Ins. Grp.*, 2015 WL 8276333, at *3 (E.D. Cal. Dec. 9, 2015) (allowing Eighth Amendment claim to survive motion to dismiss because plaintiff alleged reckless driving at speeds of 80 miles an hour alongside failure to seatbelt); *Stewart v. Wenerowicz*, 2015 WL 5092865, at *8 (E.D. Pa. Aug. 27, 2015) (noting that "a number of federal district courts and circuits have concluded that an Eighth Amendment claim exists where corrections officers transport a prisoner in a vehicle lacking adequate safety restraints, drive the vehicle recklessly with knowledge of the danger posed to the prisoner, and plaintiff suffers an injury resulting from this conduct); *Gibbs v. Village of Flossmoor*, 2014 WL 1396184, at *5 (N.D. Ill. April 10, 2014) (allowing Fourteenth Amendment claim survive dismissal where plaintiff alleged that he was handcuffed and placed in a police car without being belted and defendants slammed on the breaks unnecessarily with the intent to harm or punish the plaintiff); *Barela v. Romero*, 2007 WL 2219441, at *7 (D.N.M. May 10, 2007) (lack of seatbelts for shackled prisoner coupled with allegations of purposeful, reckless driving by defendant were sufficient to plead an Eighth Amendment claim).

[6] The Court notes that Defendants' opening brief, which moved for dismissal of Count I, only asserted arguments concerning the sufficiency of Plaintiff's Fourth Amendment claim. See [47] at 4-6. Plaintiff's response highlighted this omission and also argued the merits of his alternative Fourteenth Amendment Claim. See [51] at 7-9. Through their reply, Defendants assert that Fourth and Fourteenth Amendment claims cannot be predicated on the same facts and further argue that Count I's allegations are insufficient to state a Fourteenth Amendment claim in any event. Notwithstanding Defendants' failure to address the

### 4. Qualified Immunity

Defendants next argue that David is entitled to qualified immunity because his conduct "does not violate the Fourth Amendment" or any other "clearly established right." See [47] at 8-9. Under the doctrine of qualified immunity, "government officials performing discretionary functions are protected from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Plaintiffs are not required to plead facts to defeat qualified immunity, and under notice pleading standards often there are not enough facts alleged to make qualified immunity determinations. *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). When considering a qualified immunity defense, the Court contemplates the following: (1) taken in the light most favorable to the party asserting injury, do the facts alleged establish that Defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of Defendant's conduct. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011) (citing *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925-26 (7th Cir. 2011)). As indicated above, taking the allegations as true, the amended complaint states a claim for a violation of Plaintiff's rights under the Fourth Amendment. Accordingly, the remaining inquiry for qualified immunity purposes is whether these rights were clearly established at the time of the injury.

To invoke a "clearly established" right, the Supreme Court has explained that the right must be "particularized," which means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*

---

Fourteenth Amendment claim until their reply, the issue has been adequately briefed and the disposition follows from Supreme Court precedent. Accordingly, a finding of waiver would not be appropriate. Interestingly, Defendants posit that the Fourteenth Amendment is the "proper" vehicle for Plaintiff's claimed injuries here. See [55] at 4. For the reasons elaborated above, the Court disagrees.

*v. Creighton*, 483 U.S. 635, 640 (1987). Applying this standard, as of the time of the accident in November 2013, the Seventh Circuit had long held that the Fourth Amendment protects a person's rights until he has had a probable cause hearing or other determination. See *Luck v. Rovenstine*, 168 F.3d 323, 326 (7th Cir. 1999) ("There is, to be sure, a difference between the constitutional provisions that apply to the period of confinement before and after a probable cause hearing: the Fourth Amendment governs the former and the Due Process Clause the latter."); *Villanova*, 972 F.2d at 797 (same). In addition, as of November 2013, the Seventh Circuit had applied the Fourth Amendment's reasonableness standard to arrestees prior to a finding of probable cause in situations that were not strictly confined to excessive force, including conditions of their confinement and medical treatment during that limited time period. See, *e.g.*, *Ortiz*, 656 F.3d at 530; *Lopez*, 464 F.3d at 719. Under the reasonable officer standard of *Anderson*, state police officers knew or should have known that driving recklessly with a handcuffed but otherwise unrestrained arrestee in their custody—as Plaintiff alleges—could pose an unreasonable threat to that individual's safety. Based on the foregoing, the Court finds that it would be improper to grant Defendant David qualified immunity at this time.

**B.      Count IV – Spoliation of Evidence by Defendant David**

Count IV, titled "42 U.S.C. § 1983 and Illinois Law – Spoliation of Evidence" contains two specific allegations: "Defendant David intentionally destroyed, recklessly failed to preserve, or otherwise interfered in bad faith with the gathering of evidence, namely by interfering with the operation of the audio recording capabilities of his cruiser's video camera and related audio equipment following the crash"; and "[t]hat evidence was relevant and would have been unfavorable to Defendant David and other unknown Illinois State Police personnel." See [41] at ¶¶ 46-47. Defendants move to dismiss Count IV in part, arguing that it fails to state a plausible

federal claim for intentional spoliation of evidence against Defendant David because it fails to identify any constitutional or federal right that was violated by the alleged spoliation of evidence, which is necessary to state a claim under § 1983. [47] at 6-7. In response, Plaintiff argues that Count IV states a plausible Illinois state law claim; Plaintiff makes no attempt to identify any federal right or authority giving rise to a § 1983 claim for spoliation of evidence. [51] at 9-10.

The Court agrees with Defendants. Section 1983 is not a source of substantive rights on its own. *Graham*, 490 U.S. at 393-394; see also *Payne*, 161 F.3d at 1039 (in alleging a claim under § 1983, a plaintiff must allege facts sufficient to show that the defendants deprived him of a right or an interest secured by the Constitution or laws of the United States). Even Plaintiff himself has acknowledged that "[i]dentification of the applicable Constitutional federal right(s) is * * * a necessary component of alleging a cognizable § 1983 action." [51] at 4 (citation omitted).

In Count IV, however, Plaintiff has failed to identify a constitutional right or interest separate and apart from § 1983 that he believes Defendant David violated with regard to the allegedly manipulated audio recording, and as such, he has not alleged a plausible civil federal claim for spoliation of evidence.[7] Accordingly, the Court grants Defendants' motion to dismiss insofar as it applies to the federal claim alleged in Count IV. Since Defendants have not

---

[7] An independent search by the Court has not revealed any authority to support the proposition that spoliation of evidence in a civil case implicates a constitutional right. See, *e.g.*, *Van Buren v. Crawford County*, 2017 WL 1353805, at *7 n.2 (E.D. Mich. Apr. 13, 2017) ("A single instance of evidence spoliation in a civil suit is not violative of a federal right."); *Turner v. United States*, 736 F.3d 274, 282 n.5 (4th Cir. 2013) ("Spoliation of evidence, standing alone, does not constitute a basis for a civil action under either federal or admiralty law."). Of course, this analysis would be markedly different if Plaintiff was alleging that Defendant David destroyed evidence that would have been exculpatory for him in the criminal context.

challenged the adequacy of the Illinois intentional spoliation claim, the Court does not analyze its plausibility here.[8]

### C.    Count V – Section 1983 Individual Capacity Claim against Defendant Grau

Finally, Defendants move to dismiss the § 1983 individual capacity claim against Defendant Grau.  There are two ways in which a government actor may be sued: in his official capacity (*Monell*) or his individual (sometimes called "personal") capacity.  Generally, an individual capacity suit requires a showing that the defendant was personally involved in the alleged constitutional deprivation.  See *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005); *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003).

Here, Plaintiff has alleged an individual capacity claim against Defendant Grau titled "Failure to Train or Supervise."  Defendants' motion to dismiss argues both that Plaintiff's claim against Defendant Grau is time-barred and also that it fails to allege adequately his personal involvement in Plaintiff's injuries.  See [47] at 7-8; [55] at 6-8.  The Court will address each argument in turn.

### 1.    Statute of Limitations

Although § 1983 contains no specified statute of limitations, § 1983 claims are considered personal injury claims subject to the forum state's personal injury limitations statute.

---

[8] The Court notes, however, that Illinois does not appear to recognize a tort of "intentional spoliation of evidence," nor does it recognize an independent tort for negligent spoliation.  Rather, negligent spoliation of evidence is a type of ordinary negligence.  *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509-10 (7th Cir. 2007) (citing *Boyd v. Travelers Ins. Co*., 652 N.E.2d 267, 269-70 (Ill. 1995)); *Cangemi v. Advocate S. Suburban Hosp*., 845 N.E.2d 792, 815 (Ill. App. 2006) ("Plaintiffs cite to no case that specifically recognizes intentional spoliation of evidence as a tort in Illinois.  Neither have we found such an Illinois case.").  In order to prevail on a negligence claim for spoliation of evidence, a plaintiff must show that:  (1) the defendant owed the plaintiff a duty to preserve the evidence; (2) the defendant breached that duty by losing or destroying the evidence; (3) the loss or destruction of the evidence was the proximate cause of the plaintiff's inability to prove an underlying lawsuit; and (4) as a result, the plaintiff suffered actual damages.  *Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 748-49 (N.D. Ill. 2016) (citing *Martin v. Keeley & Sons, Inc*., 979 N.E.2d 22, 27 (Ill. 2012)).

See *Woods v. Ill. Dep't of Children & Family Servs.*, 710 F.3d 762, 765 (7th Cir. 2013). The Illinois personal injury statute of limitations is two years from the date of the injury. 735 ILCS 5/13-202. The parties do not dispute the applicability of the two-year statute of limitations to Plaintiff's claims against Defendant Grau.

Plaintiff's injury occurred on November 16, 2013; his *pro se* complaint was officially docketed on November 9, 2015. See [9]. Plaintiff's original complaint named David and "Illinois State Police Agency 'D-Chicago'" as Defendants, and the complaint centered on the traffic accident and Defendant David's conduct. *Id.* Upon initial review this Court dismissed the agency pre-service finding that (1) it was not a suable entity, and (2) even if it were, it was immune from suit as an arm of the state. See [8]. On September 15, 2016, Plaintiff, through recruited counsel, filed an amended complaint [41], keeping David as a Defendant and adding Grau. Defendants argue that Plaintiff's claim against Defendant Grau is untimely, as he was added after the applicable statute of limitations had run. See [47] at 7-8. In response, Plaintiff argues that his claims against Defendant Grau relate back to his original complaint, which was timely filed. See [51] at 10-12.

Federal Rule of Civil Procedure 15(c) allows amendment to a pleading that would otherwise be time-barred when the amendment relates back to the date of the original pleading. Fed. R. Civ. P. 15(c)(1). An amendment that seeks to add a new party relates back when it asserts a claim that arises out of the same conduct, transaction, or occurrence set out in the original pleading, and when the party to be brought in (i) received notice of the action within the time for service such that it will not be prejudiced, *and* (ii) knew or should have known that the action would have been brought against it but for a mistake concerning the party's identity. Fed. R. Civ. P. 15(c)(1)(C)(i)-(ii).

The Supreme Court explained in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), that the inquiries the Court is permitted to permitted to make in deciding whether an amended complaint relates back to the date of the original one are, first, whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant; and second, whether, even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself. *Id*. at 553-54. Both inquiries focus on what the newly added defendant knew and when. In particular, with regard to the second inquiry, *Krupski* stated that Rule 15 "simply requires that the prospective defendant has received sufficient 'notice of the action' within the [service period (see Fed. R. Civ. P. 4(m))[9]] that he will not be prejudiced in defending the case on the merits." *Id*. at 554 n.5; *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 558 (7th Cir. 2011) ("a party who is on notice long before the statute of limitations expires that he is an intended defendant, and who suffers no harm from the failure to have been named as a defendant at the outset, is in the same position as a defendant sued within the statute of limitations"). Notice must be more than notice of the event that gave rise to the cause of action; Rule 15(c) requires notice of "the institution of the action," which refers to the district court proceeding itself. *Williams v. U.S. Postal Serv.*, 873 F.2d 1069, 1073 n.3 (7th Cir. 1989).

Defendants contend that both elements (mistake and notice) have not been satisfied. In response, Plaintiff argues that his claim against Defendant Grau should not be dismissed at this stage, because the statute of limitations is an affirmative defense. The Court agrees with Plaintiff. Dismissing a claim as untimely at the pleading stage is an "unusual step, since a

---

[9] When Plaintiff's original complaint was filed on November 9, 2015, Rule 4(m) contained a 120-day service period. The Rule was amended on December 1, 2015 to provide a 90-day service period.

complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). "[A] federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). A claim, however, may be dismissed as untimely at the motion to dismiss stage if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

As Plaintiff points out, his amended complaint does not contain any allegations that would serve to defeat a finding that the amended complaint relates back to the original complaint. See [51] at 12; see generally [41]. Because the amended complaint does not speak to Defendant Grau's knowledge of Plaintiff's pleading mistake or when Defendant Grau received notice of the lawsuit, the Court cannot resolve the Rule 15(c)(1)(C) issue in Defendants' favor on a motion to dismiss.[10] See, *e.g.*, *Clair v. Cook County, Ill.*, 2017 WL 1355879, at *4 (N.D. Ill. Apr. 13, 2017) (denying a motion to dismiss on statute of limitations grounds due to lack of information about what the newly added defendants knew or should have known); *Ryan v. City of Chicago*, 2016 WL 6582570, at *2 (N.D. Ill. Nov. 7, 2016) ("Because these developments require the court to consider what the Unknown Officers knew concerning Ryan's suit, the Court denies the City's motion [to dismiss] at this time and awaits * * * a more developed record before making a determination on the statute of limitations issues raised here."); accord *Klinger*

---

[10] The Court notes that the amended complaint and the parties' briefing are not clear as to when Defendant Grau served as the ISP Director, aside from allegations that he held this post at the time the traffic incident and alleged evidence tampering occurred. It may be that this is a relevant factor in the relation-back analysis.

*v. City of Chicago*, 2017 WL 736895, at \*6 (N.D. Ill. Feb. 24, 2017); *Karney v. City of Naperville*, 2016 WL 6082354, at \*9 (N.D. Ill. Oct. 18, 2016).

This result is bolstered by the fact that Plaintiff's *pro se* original complaint named the "Illinois State Police Agency 'D-Chicago'" as a defendant. See *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 560 (7th Cir. 1996) (explaining that the rule is intended to be a means for correcting the mistakes of plaintiffs suing official bodies in determining which party is the proper defendant); see also *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (district courts are to construe *pro se* complaints liberally and to apply to them less stringent standards than would be applied to complaints drafted by lawyers). Further, Defendants have not argued that Defendant Grau has suffered any prejudice on account of the delay in adding him to this action. See generally [55]. Accordingly, the Court will turn to Defendant's arguments concerning the merits of Count V.[11]

### 2. Personal Involvement

Defendants contend that Plaintiff has failed to allege Defendant Grau's personal involvement in the alleged constitutional deprivations and thus does not state a § 1983 claim against him. Defendants correctly point out that the doctrine of *respondeat superior* cannot be used to hold a supervisor liable for a subordinate's violation of Plaintiff's constitutional rights. *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008); see also *Ascroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Sanville v. McCaughtry*, 266 F.3d 724, 739-40 (7th Cir. 2001). Plaintiff's response, however, makes clear that his claim against Defendant Grau is not based on any direct involvement in the November 16, 2013 incident itself, but on Defendant Grau's alleged knowing failure to enact policies and implement

---

[11] Plaintiff and Defendants omit any argument regarding whether this new claim arises out of the same conduct, transaction, or occurrence set out in his original *pro se* complaint, as required by Rule 15(c)(1)(B).

training for ISP officers to prevent the injuries suffered by Plaintiff and the destruction of evidence that he maintains might help prove his claims. See [51] at 12-14; see also [41] at ¶¶ 49-51. Specifically, the amended complaint alleges that Defendant Grau, who—"at all relevant times"—was responsible for creating, implementing, and overseeing the ISP's policies, practices, and procedures regarding (1) "the restraint and transportation of inmates" and (2) the "preservation of evidence," failed to implement sufficient policies and provide sufficient training to ISP officers to prevent Plaintiff's specific injuries and the spoliation of evidence alleged in the complaint. [41] at ¶¶ 7, 49-50. The amended complaint continues to allege that Defendant Grau knew that the ISP policies and training were insufficient to prevent Plaintiff's injuries and the spoliation of evidence." *Id.* ¶ 51. Plaintiff thus argues that he has pleaded a claim against Defendant Grau because he has sufficiently alleged that Defendant Grau had knowledge of and was involved with the policies that led to the "irresponsible manner in which [Plaintiff] was restrained" and the "reckless manner in which Defendant David drove while [Plaintiff] was handcuffed and unbelted in the back seat." [51] at 13.

At first blush, Plaintiff's claim against Defendant Grau appears to be more akin to an official capacity claim. See *Sanville*, 266 F.3d at 739 ("failure to train claims are usually maintained against municipalities, not against individuals"); *Atkins v. City of Chicago*, 2009 WL 1209032, at *1 (N.D. Ill. May 1, 2009) (noting that § 1983 individual capacity claim premised on defendant's "asserted failure to train and to institute policies and procedures" resembled an official capacity claim, but assuming arguendo that plaintiff could "portray [defendant's] asserted failure * * * as his individual conduct," despite the fact that doing so was "counterintuitive"). "[A]n official satisfies the personal responsibility requirement of section 1983 if the conduct causing the constitutional deprivation occurs at his direction or with his

knowledge and consent." *Arnett v. Webster*, 658 F.3d 742, 757-58 (7th Cir. 2011) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

Liability must lie upon more than a mere right to control employees and cannot rely on simple negligence. Instead, there must be some conduct on the supervisor's part to which a plaintiff can point that is directly correlated with the plaintiff's injury. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). The Seventh Circuit has stated that "if [a] supervisor personally devised a deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act." *Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998); see also *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 615 (7th Cir. 2002) (finding personal involvement of agency officials where plaintiff alleged that officials were personally responsible for creating "policies, practices and customs" that caused subordinates to violate constitutional rights).[12]

Here, Plaintiff alleges that Defendant Grau was responsible for and has knowingly permitted the creation of a dangerous environment that led directly to the traffic accident and his injuries. The Court notes that the amended complaint has not offered much beyond labels and conclusions, but, at this stage, reading the allegations broadly and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that the amended complaint adequately alleges that Defendant Grau knew of and was personally responsible for creating the policies and practices that caused a constitutional injury. See, *e.g.*, *Shultz v. Dart*, 2013 WL 5873325, at *3 (N.D. Ill. Oct. 31, 2013) (allegations that sheriff had policy of keeping discharged detainees in custody and also that he knew that such a policy resulted in unconstitutionally lengthy detentions

---

[12] Put differently, a senior "official who was not personally involved in the acts or omissions complained of nonetheless may be liable in his individual capacity if he can be expected to have either known of or participated in creating systemic inadequate conditions." *Warren ex rel. Warren v. Dart*, 2010 WL 4883923, at *6 (N.D. Ill. Nov. 24, 2010) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996)).

survived motion to dismiss); *Carpenter v. Brown*, 2011 WL 6936360, at *2 (N.D. Ill. Dec. 29, 2011) (denying motion to dismiss individual capacity claim against official policymaker where plaintiff's allegations "suggest[ed] a policy or practice for which Defendant may be responsible"); *Aleman v. Dart*, 2010 WL 4876720, at *5-*6 (N.D. Ill. Nov. 23, 2010) (allegations that sheriff and jail executive failed to implement policies designed to provide constitutionally adequate healthcare to pretrial detainees survived motion to dismiss); *Haynes v. Dart*, 2009 WL 590684, at *3 (N.D. Ill. Mar. 6, 2009) (allegations that sheriff and jail executive director individually created, authorized, or implemented policies or procedures that underdiagnosed detainees' mental illness and were aware of deficient conditions and failed to remedy them were sufficient to withstand motion to dismiss); cf. *Postlewaite v. Godinez*, 2014 WL 6685383, at *4 (S.D. Ill. Nov. 25, 2014) (dismissing § 1983 complaint against senior prison officials because plaintiff failed to allege that they created the policies, practices, or customs that resulted in the plaintiff's constitutional deprivation). The case on which Defendants rely, *Simpson v. Meijer, Inc.*, 2013 WL 3834641, at *4 (N.D. Ill. July 24, 2013), is unpersuasive here because the complaint in that case alleged only that the supervisory defendant was responsible for a "policy or procedure" that led to the plaintiff's injury, and for a failure to adequately train and supervise subordinates. Here, Plaintiff sets forth similar allegations and further alleges that Defendant Grau knew that the ISP policies and training were constitutionally inadequate and yet he failed to implement sufficient policies and training. Defendants may ultimately prevail on this claim by showing that the ISP policies and training were adequate to prevent Plaintiff's specific injuries or that Defendant Grau was merely negligent in failing to implement certain policies or in training his employees on arrestee restraint and transport procedures, but those inquiries will have to wait until the factual record is developed. Accordingly, the Court denies the Defendants' motion to

dismiss the individual capacity claim against Defendant Grau to the extent that it pertains to policies and/or training regarding the "restraint and transportation of arrestees" by ISP officers. The remainder of Count V—regarding Defendant Grau's participation with and knowledge of policies and training that caused the spoliation of evidence—is dismissed because, as already explained above, spoliation of evidence cannot support a § 1983 claim.

## IV.    Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss in part:  Count I is dismissed to the extent that it asserts a claim for violation of the Fourteenth Amendment; Count IV is dismissed to the extent that it attempts to state a § 1983 claim for spoliation; and Count V is dismissed to the extent that it is premised on spoliation.  The Court denies the motion [47] in all other respects.[13]  The case is set for further status on July 6, 2017 at 9:45 a.m.  In the event that Plaintiff desires to file a second amended complaint, he shall advise the Court and defense counsel at that time.


Dated:  June 20, 2017

_____
Robert M. Dow, Jr.
United States District Judge

---

[13] Because the Court is allowing certain of Plaintiff's federal claims to go forward, it will exercise supplemental jurisdiction over Plaintiff's state law claims.  28 U.S.C. § 1367(a).  Defendants have not raised the issue of whether the state law claims should be heard in the Illinois Court of Claims, 705 ILCS 505/8(d), and the Court, therefore, will not consider it.